| | |
|---|---|
| MARDIS DUNN, Individually and on Behalf of All Others Similarly Situated, <br><br> v. <br><br> CENERGY INTERNATIONAL SERVICES, LLC and SHELL OIL COMPANY. | **Case No.: 4:17-cv-03738** <br> Collective Action (29 U.S.C. § 216(b)) <br> Class Action (FED. R. CIV. P. 23) |

## CLASS AND COLLECTIVE ACTION COMPLAINT

### SUMMARY

1.      Mardis Dunn brings this lawsuit to recover unpaid overtime wages and other damages under the Fair Labor Standards Act, 29 U.S.C. § 201, *et seq.* ("FLSA") and the Alaska Wage and Hour Act ("AWHA").

2.      Dunn was paid a day rate, without any overtime compensation.

3.      Cenergy International Services LLC ("Cenergy") staffed out certain workers, like Dunn, to Shell Oil Company ("Shell").

4.      Cenergy and Shell suffered or permitted these workers to work more than 40 hours in a week, but did not pay them overtime.

5.      Defendants' failure to pay overtime to these employees violates the FLSA.

6.      Defendants' failure to pay overtime to these employees violates the AWHA.

7.      This collective action seeks to recover the unpaid overtime wages and other damages owed to these workers.

### JURISDICTION AND VENUE

8.      This Court has original subject matter jurisdiction pursuant to 28 U.S.C. § 1331 because this action involves a federal question under the FLSA. 29 U.S.C. § 216(b).

9.      The Court has supplemental jurisdiction over state law claims pursuant to 28 U.S.C. § 1367.

10.      Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b), because a substantial part of the events at issue occurred in this District.

11.      Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b), because Defendants reside in this District.

## THE PARTIES

12.      Dunn worked for Cenergy and Shell as a logistics coordinator.

13.      Dunn worked for Cenergy and Shell from August 2014 to August 2015.

14.      Dunn was paid a day-rate with no overtime compensation.

15.      Dunn brings this action on behalf of himself and all other similarly situated workers who were paid a day-rate with no overtime pay.

16.      Cenergy and Shell paid each of these workers a flat amount for each day worked and failed to pay them overtime for all hours that they worked in excess of 40 hours in a workweek in accordance with the FLSA and AWHA.

17.      Dunn's written consent to be a party plaintiff is attached as Exhibit A.

18.      Dunn represents at least two classes of similarly situated co-workers.

19.      First, Dunn represents a class of similarly situated day-rate workers under the FLSA pursuant to 29 U.S.C. § 216(b). The FLSA Class sought to be certified is defined as:

> **All current and former day-rate workers staffed by Cenergy International Services to Shell Oil Company to work in the United States in the past three years.**

20.      Second, Dunn represents a class of similarly situated day-rate under the AWHA pursuant to Federal Rule of Civil Procedure 23. The Alaska Class sought to be certified is defined as:

**All current and former day-rate workers staffed by Cenergy International Services to Shell Oil Company to work in Alaska in the past three years.**

21. Collectively, the FLSA Class Members and Alaska Class Members are referred to as "Putative Class Members."

22. **Cenergy International Services LLC** is a Delaware company with its headquarters and principal place of business in Harris County, Texas. It may be served by serving its registered agent for service of process, **Cogency Global Inc., 1601 Elm St., Dallas, Texas 75201**.

23. **Shell Oil Company** is a massive enterprise consisting of more than one entity. Shell has its headquarters and principal place of business in Harris County, Texas. It may be served by serving its registered agent for service of process, **CT Corporation System, 1999 Bryan St., Ste. 900, Dallas, Texas 75201**.

## CENERGY COVERAGE UNDER THE FLSA

24. At all times hereinafter mentioned, Cenergy has been an employer within the meaning of section 3(d) of the FLSA, 29 U.S.C. § 203(d).

25. At all times hereinafter mentioned, Cenergy has been part of an enterprise within the meaning of section 3(r) of the FLSA, 29 U.S.C. § 203(r).

26. At all times hereinafter mentioned, Cenergy has been part of an enterprise engaged in commerce or in the production of goods for commerce within the meaning of section 3(s)(1) of the FLSA, 29 U.S.C. § 203(s)(1), in that said enterprise has and has had employees engaged in commerce or in the production of goods for commerce, or employees handling, selling, or otherwise working on goods or materials that have been moved in or produced for commerce by any person and in that said enterprise has had and has an annual gross volume of sales made or business done of not less than $500,000 (exclusive of excise taxes at the retail level which are separately stated).

27.     At all times hereinafter mentioned, Dunn and the Putative Class Members and Hourly Class Members were engaged in commerce or in the production of goods for commerce.

## SHELL COVERAGE UNDER THE FLSA

28.     At all times hereinafter mentioned, Shell has been an employer within the meaning of section 3(d) of the FLSA, 29 U.S.C. § 203(d).

29.     At all times hereinafter mentioned, Shell has been part of an enterprise within the meaning of section 3(r) of the FLSA, 29 U.S.C. § 203(r).

30.     At all times hereinafter mentioned, Shell has been part of an enterprise engaged in commerce or in the production of goods for commerce within the meaning of section 3(s)(1) of the FLSA, 29 U.S.C. § 203(s)(1), in that said enterprise has and has had employees engaged in commerce or in the production of goods for commerce, or employees handling, selling, or otherwise working on goods or materials that have been moved in or produced for commerce by any person and in that said enterprise has had and has an annual gross volume of sales made or business done of not less than $500,000 (exclusive of excise taxes at the retail level which are separately stated).

31.     At all times hereinafter mentioned, Dunn and the Putative Class Members were engaged in commerce or in the production of goods for commerce.

## FACTS

32.     Cenergy is a staffing company.

33.     Cenergy provides the energy industry with specialized energy personnel, safety solutions, inspection solutions, logistics optimization and vendor management. Cenergy, Home, https://www.cenergyintl.com/ (last visited Dec. 11, 2017).

34.     Cenergy's employees routinely handle goods or materials—such as hard hats, tools, steel toe shoes, automobiles, and cell phones—that have moved in, or were produced for, interstate commerce.

35.     Cenergy's annual gross revenues are in the millions.

36.     Cenergy is headquartered in Houston, Texas.

37.     Cenergy provides personnel, including Dunn, to Shell.

38.     Shell is the United States-based subsidiary of Royal Dutch Shell, a multinational major oil company.

39.     Employing tens of thousands of workers in the United States, Shell is part of one of the largest oil companies in the world.

40.     Shell's employees routinely handle goods or materials – such as hard hats, tools, steel toe shoes, automobiles, and cell phones - that have moved in, or were produced for, interstate commerce.

41.     Shell's annual gross revenues are in the billions.

42.     Shell is headquartered in Houston, Texas.

43.     Shell is one of America's largest oil and natural gas producers.

44.     In order to perform its production operations, Shell employs (among others) workers provided by Cenergy.

45.     Over the past three years, Shell and Cenergy have employed dozens of day rate workers, including Dunn, to work on Shell's worksites.

46.     Cenergy admits the day rate workers are its "employees."

47.     Cenergy withholds taxes from their pay.

48.     Cenergy admits Dunn was its employee.

49.     Cenergy withheld taxes from Dunn's pay.

50.     Shell classified the day-rate workers as "independent contractors" or "consultants."

51.     Shell classified Dunn as an "independent contractor" or "consultant."

52. All of the day rate workers that Cenergy staffs out to Shell work under Shell's day-to-day direction during their work time.

53. Neither Dunn nor the other workers like him advertise their services in the way that a "stand alone" business would.

54. Dunn and the other workers like him find their employment within the businesses of Shell.

55. Dunn and the Putative Class Members are economically dependent on Shell within the meaning of the FLSA.

56. Shell controlled meaningful aspects of the day-rate workers' employment relationship.

57. Shell supervised the day-rate workers (including Dunn) through its admitted employees.

58. Shell subjected the day-rate workers (including Dunn) to additional control through its policies and procedures.

59. The day-rate workers (including Dunn) are required to comply with all "applicable codes and standards … adopted by" Shell.

60. Shell required the day-rate workers (including Dunn) to complete daily reports of their work.

61. Like other Shell employees, the day-rate workers (including Dunn) submit these reports through Shell's computer system.

62. Shell set the day-rate workers' schedules.

63. Shell required the day-rate workers to attend meetings, follow directions, and abide by procedures in the same manner as its "admitted" employees.

64. Cenergy presented the day-rate workers with non-negotiable rates of pay.

65. Shell largely determined the rates of pay offered to the day-rate workers.

66.     Shell has to approve any changes to the day-rate workers compensation.

67.     Shell paid many day-rate workers (including Dunn) bonuses for longevity and/or performance.

68.     With minor exceptions, Shell owned and/or provided all of the equipment the day-rate workers needed to perform their work.

69.     Shell invested hundreds of thousands of dollars, at a minimum, in the projects that day-rate workers worked on.

70.     The day-rate workers provided primarily their labor.

71.     Shell owned, or controlled, the premises on which the day-rate workers performed their work.

72.     For example, Dunn spent years working on Shell's platforms.

73.     Dunn typically worked 12 or more hours per day, for weeks on end.

74.     Cenergy knows Dunn, and the other day-rate workers, work more than 40 hours in a week.

75.     Shell's records reflect the fact Dunn, and the other day-rate workers, work more than 40 hours in a week.

76.     Shell schedules these workers for 12-plus hours a day, for as many as 7 days a week.

77.     Cenergy has been aware of the FLSA's requirements for more than 3 years.

78.     Shell has been aware of the FLSA's requirements for decades.

79.     Cenergy has been aware of the AWHA's requirements for more than 2 years.

80.     Shell has been aware of the AWHA's requirements for decades.

81.     Cenergy has known for many years that the FLSA and the AWHA recognize joint employer liability.

82.     Cenergy has known for many years that joint employers are responsible, both individually and jointly, for complying with the FLSA's overtime provisions.

83.     Cenergy has known for many years that joint employers are responsible, both individually and jointly, for complying with the overtime provisions of the AWHA.

84.     Shell has known for many years that the FLSA and the AWHA recognize joint employer liability.

85.     Shell has known for many years that joint employers are responsible, both individually and jointly, for complying with the FLSA's overtime provisions.

86.     Shell has known for many years that joint employers are responsible, both individually and jointly, for complying with the overtime provisions of the AWHA.

87.     Cenergy and Shell knew the day-rate workers are not exempt from the FLSA's overtime provisions.

88.     Nonetheless, Cenergy failed to pay Dunn and the other day-rate workers' overtime for hours worked in excess of 40 in a workweek.

89.     Although Shell had the ability to ensure Dunn and the other day-rate workers received overtime, it permitted Cenergy to deny these workers overtime.

### FIRST CAUSE OF ACTION—FLSA VIOLATIONS

90.     By failing to pay Dunn and the FLSA Class overtime at one-and-one-half times their regular rates, Cenergy and Shell violated the FLSA's overtime provisions.

91.     Because it knew, or showed reckless disregard for whether, its pay practices violated the FLSA, Cenergy and Shell owe these wages for the past three years.

92.     Cenergy and Shell owe Dunn and the FLSA Class an amount equal to the unpaid overtime wages as liquidated damages.

93.     Dunn and the FLSA Class are entitled to recover all reasonable attorneys' fees, costs, and expenses incurred in this action.

## SECOND CAUSE OF ACTION—AWHA VIOLATIONS

94.     The conduct alleged in this Complaint violates the AWHA.

95.     Cenergy was and is an "employer" within the meaning of the AWHA.

96.     Shell was and is an "employer" within the meaning of the AWHA.

97.     At all relevant times, Cenergy employed each member of the Alaska Class as an "employee" within the meaning of the AWHA.

98.     At all relevant times, Shell employed each member of the Alaska Class as an "employee" within the meaning of the AWHA.

99.     The AWHA requires employers to pay overtime to all non-exempt employees.

100.    Alaska law also requires employers to notify each "employee in writing at the time of hiring of the day and place of payment, and the rate of pay, and of any change with respect to these items on the payday before the time of change." Alaska Stat. Ann. § 23.05.160.

101.    The members of the Alaska Class were and are non-exempt employees who are entitled to be paid overtime for all overtime hours worked.

102.    Within the applicable limitations period, Cenergy and Shell had a policy and practice of failing to pay overtime pay to the Alaska Class members for their hours worked in excess of 8 hours in a day.

103.    Within the applicable limitations period, Cenergy and Shell had a policy and practice of failing to pay overtime pay to the Alaska Class members for their hours worked in excess of 40 hours per week.

104.    As a result of Cenergy and Shell's failure to pay overtime to the Alaska Class, Cenergy and Shell violated the AWHA.

105. The Alaska Class is entitled to recover their unpaid overtime based on Cenergy and Shell's failure to pay 1.5 times their regular rates of pay for work performed in excess of 40 hours in a week, an amount equal to these underpayments as liquidated damages, and such other legal and equitable relief resulting from their violations of the AWHA as the Court deems just and proper.

106. The Alaska Class also seeks recovery of attorneys' fees and costs of this action to be paid by Cenergy and Shell, as provided by the AWHA.

### CLASS AND COLLECTIVE ACTION ALLEGATIONS

107. Dunn incorporates all previous paragraphs and alleges that the illegal pay practices Cenergy and Shell imposed on him were likewise imposed on the Putative Class Members.

108. Numerous individuals were victimized by this pattern, practice, and policy which is in willful violation of the FLSA and AWHA.

109. Numerous other individuals who worked with Dunn indicated they were improperly classified as independent contractors, paid in the same manner, performed similar work, and were not properly compensated for all hours worked as required by state and/ or federal wage laws.

110. Thus, Cenergy and Shell imposed a uniform practice or policy on Dunn and the Putative Class Members regardless of any individualized factors.

111. Based on his experiences and tenure with Cenergy and Shell, Dunn is aware that Cenergy and Shell's illegal practices were imposed on the Putative Class Members.

112. Putative Class Members were all improperly classified as independent contractors and not afforded the overtime compensation when they worked in excess of 40 hours per week.

113. Cenergy and Shell's failure to pay wages and overtime compensation at the rates required by the FLSA and AWHA result from generally applicable, systematic policies, and practices which are not dependent on the personal circumstances of the Putative Class Members.

114. Dunn's experiences are therefore typical of the experiences of the Putative Class Members.

115. The specific job titles or precise job locations of the various Putative Class Members do not prevent class or collective treatment.

116. Dunn has no interests contrary to, or in conflict with, the Putative Class Members. Like each member of the proposed classes, Dunn has an interest in obtaining the unpaid overtime wages owed under state and/or federal law.

117. A class and collective action, such as the instant one, is superior to other available means for fair and efficient adjudication of the lawsuit.

118. Absent this action, many Putative Class Members likely will not obtain redress of their injuries and Cenergy and Shell will reap the unjust benefits of violating the FLSA and AWHA.

119. Furthermore, even if some of the Putative Class Members could afford individual litigation against Cenergy and Shell, it would be unduly burdensome to the judicial system.

120. Concentrating the litigation in one forum will promote judicial economy and parity among the claims of individual members of the classes and provide for judicial consistency.

121. The questions of law and fact common to each of the Putative Class Members predominate over any questions affecting solely the individual members. Among the common questions of law and fact are:

(a) Whether Cenergy and Shell employed the Putative Class Members within the meaning of the FLSA and NMMWA;

(b) Whether the Putative Class Members were exempt from overtime;

(c) Whether the Putative were not paid overtime at one and one half their regular rate of pay;

(d) Whether Cenergy and Shell's decision to not pay overtime to the Putative Class Members was made in good faith; and

(e) Whether Cenergy and Shell's violation of the FLSA was willful.

122.     Dunn's claims are typical of the Putative Class Members claims. Dunn and the Putative

Class Members Class Members have sustained damages arising out of Cenergy and Shell's illegal and

uniform employment policy.

123.     Dunn knows of no difficulty that will be encountered in the management of this

litigation that would preclude its ability to go forward as a class or collective action.

124.     Although the issue of damages may be somewhat individual in character, there is no

detraction from the common nucleus of liability facts. Therefore, this issue does not preclude class or

collective action treatment.

### JURY DEMAND

125.     Dunn demands a trial by jury.

### RELIEF SOUGHT

126.     WHEREFORE, Dunn prays for judgment against Cenergy and Shell as follows:

(a)     For an order certifying class action(s) under Rule 23 for the purposes of the claims under Alaska law;

(b)     For an order certifying this case as a collective action for the purposes of the FLSA claims;

(c)     For an order finding Cenergy and Shell liable for violations of state and federal wage laws with respect to Dunn and all Putative Class Members covered by this case;

(d)     For a judgment awarding all unpaid wages, liquidated damages, and/or penalty damages, to Dunn and all Putative Class Members covered by this case;

(e)     For a judgment awarding Dunn and all Putative Class Members covered by this case their costs of this action;

(f)     For a judgment awarding Dunn and all Putative Class Members covered by this case their attorneys' fees;

(g)     For a judgment awarding Dunn and all Putative Class Members covered by this case pre- and post-judgment interest at the highest rates allowed by law; and

(h)     For all such other and further relief as may be necessary and appropriate.

Respectfully submitted,

*/s/ Matthew S. Parmet*

By: _____

      Richard J. (Rex) Burch
      Texas Bar No. 24001807
      S.D. Tex. Id. No. 21615
      Matthew S. Parmet
      Texas Bar No. 24069719
      S.D. Tex. Id. No. 1076547
**BRUCKNER BURCH PLLC**
8 Greenway Plaza, Suite 1500
Houston, Texas 77046
Telephone: (713) 877-8788
Telecopier: (713) 877-8065
rburch@brucknerburch.com
mparmet@brucknerburch.com

Michael A. Josephson
Texas Bar No. 24014780
S.D. Tex. Id. No. 27157
Andrew W. Dunlap
Texas Bar No. 24078444
S.D. Tex. Id. No. 1093163
**JOSEPHSON DUNLAP LAW FIRM**
11 Greenway Plaza, Suite 3050
Houston, Texas 77046
Telephone: (713) 352-1100
Telecopier: (713) 352-3300
mjosephson@mybackwages.com
adunlap@mybackwages.com

**Attorneys for Plaintiff**